# Exhibit C

**BEFORE FINRA DISPUTE RESOLUTION**

In the Matter of Arbitration Between:

MORGAN STANLEY SMITH BARNEY LLC, )
and MORGAN STANLEY SMITH BARNEY FA )
NOTES HOLDINGS LLC, )
)
    Claimants, )    FINRA Case No.:
)
vs. )
)
CHARLES PETER WALLACE )
)
    Respondent. )

FINRA Dispute Resolution, Inc.
Received
FEB 2 4 2014

**STATEMENT OF CLAIM**

Morgan Stanley Smith Barney LLC and Morgan Stanley Smith Barney FA Notes Holdings LLC (collectively herein "Morgan Stanley"), through their undersigned counsel, hereby file their Statement of Claim against their former employee, Charles Peter Wallace ("Respondent"), CRD Number 2232489.[1]

**PARTIES**

1.    Morgan Stanley Smith Barney LLC is a Financial Industry Regulatory Authority, Inc. ("FINRA") member firm with its principal place of business in Purchase, New York. In this arbitration, Morgan Stanley seeks an award against Respondent in the outstanding principal amount of $481,944, plus accrued interest on the principal, post-award interest at the legal rate, and the costs and expenses of this arbitration, including its reasonable attorneys' fees.

---

[1] On June 1, 2009, Morgan Stanley & Co. Incorporated ("MS&Co.") and Citigroup Inc. contributed the Global Wealth Management Group of MS&Co. and the Smith Barney division of CGMI Global Markets, Inc., respectively, into a new joint venture, Morgan Stanley Smith Barney LLC ("MSSB"), a newly formed registered investment advisor and broker-dealer. During the period at issue, Respondent was employed by Citigroup Global Markets Holdings Inc. and subsequently MSSB. As the Respondent's employment, registration with FINRA and all associated assets or liabilities were contributed to the joint venture. MSSB and Morgan Stanley Smith Barney FA Notes Holdings LLC are prosecuting this claim against Respondent to enforce the outstanding promissory note loan currently owned by Morgan Stanley Smith Barney FA Notes Holdings L.L.C.

2. Respondent Peter Wallace (CRD Number 2232489) was employed as an Account Executive by Morgan Stanley from on or about July 25, 2008 through June 27, 2013 in one of Morgan Stanley's offices located in Miami Beach, Florida. During his employment with Morgan Stanley, Respondent was an associated person of a member of FINRA.

3. Respondent is required to submit this matter to arbitration pursuant to: (1) the terms of the written agreement he executed during his employment with Morgan Stanley, including the arbitration clause contained in the written promissory note which is the subject of this arbitration, a copy of which is attached hereto as Exhibit A, and (b) FINRA Rule 13200.

## JURISDICTION AND HEARING VENUE

4. On July 25, 2008, Morgan Stanley and Respondent voluntarily entered into a mutually exclusive promissory note (the "Note"). Pursuant to the terms of the Note, the parties agreed that any controversy or claim arising out of the Note would be settled by arbitration in accordance with the rules of FINRA.

5. Morgan Stanley has properly executed a Uniform Submission Agreement on behalf of all Claimants in this matter. FINRA has jurisdiction to hear and decide this controversy and Respondent is bound to arbitrate this matter.

6. Morgan Stanley respectfully requests that the hearing in this case be scheduled in Miami Beach, Florida, as it is the hearing location that is closest to the location where the associated person was employed at the time the dispute arose. Morgan Stanley also requests an arbitration panel selection pursuant to FINRA Code of Arbitration for Industry Disputes Rule 13806.

## FACTS

7.      On or about July 25, 2008, Morgan Stanley loaned Respondent $867,500. The loan was evidenced by an unambiguous written promissory note signed by Respondent, a copy of which is attached hereto as Exhibit A.[2]

8.      By the terms of Exhibit A, Respondent agreed to repay $867,500 in nine annual payments of $95,388 beginning on July 25, 2009.

9.      Exhibit A provides, inter alia, that if Respondent terminated his employment voluntarily, or was terminated by Morgan Stanley for any reason whatsoever, the unpaid balance of the Note would become immediately due and payable, together with interest to accrue at 9.25% per annum[3].

13.     Respondent was terminated from employment with Morgan Stanley on June 27, 2013. As a result of Respondent's termination, the outstanding principal balance due under the Notes ($481,994) immediately became due and owing. In addition, interest has been accruing at $122.14 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loans he received from Morgan Stanley.

15.     As a result of Respondent's failure to honor his obligations to Morgan Stanley, Morgan Stanley has been forced to commence this action, and to retain counsel to represent it in this action. Accordingly, Morgan Stanley has incurred attorneys' fees and other costs that it would not have incurred had Respondent honored his obligations to Morgan Stanley. Pursuant

---

[2] Concurrent with the execution of the Note in Exhibit A, Respondent entered into a related Special Compensation Agreement with Morgan Stanley (the "Agreement"), under which Morgan Stanley agreed to pay Respondent annual bonuses equivalent to the annual installments to be paid by the Respondent under the Note, plus applicable interest. However, as set forth in the Agreement, no unpaid bonus was to be due and payable unless the Respondent continuously remained in the employment of Morgan Stanley through the date the bonus was due and payable. A copy of the Agreement associated with the Note is attached hereto Exhibit B.

[3] Reflecting a rate of Prime (3.25%) plus 6% annum.

to the terms of the Note, Respondent agreed that he would pay all costs and expenses, including attorneys' fees, incurred or sustained by Morgan Stanley in connection with the enforcement of the Note.

16. Morgan Stanley has performed all terms and conditions required of it under the Note. There is due and owing to Morgan Stanley, as of the filing of this Statement of Claim, an amount *in excess* of $511,063 which includes: a) $481,994, the principal balance; b) interest at $122.14 per day to the date Respondent satisfies his obligations to Morgan Stanley ($29,069 as of the date of this filing and c) post-award interest, all costs of collection, including, but not limited to, attorneys' fees, filing fees and all costs and expenses associated with arbitration.

WHEREFORE, Morgan Stanley respectfully requests that the Panel enter an award in favor of Morgan Stanley and against Respondent in an amount reflecting the total of:

(1) The outstanding principal amount owed under the Note, attached hereto as Exhibit A, of $481,994 plus accrued interest of 9.25% per day ($122.14) from the date of termination through the date of the award

(2) Post-award interest at the legal rate;

(3) Morgan Stanley's fees and expenses ( including all FINRA forum fees and the FINRA filing fee of $4,700 as well as its reasonable attorneys' fees incurred in enforcing the terms of the Note; and

(4) Such other and further relief as the Panel deems appropriate.

Dated: February 24, 2014

Respectfully submitted,

By: _____
Patrick G. King
pking@ulmer.com
Heidi E. VonderHeide
hvonderheide@ulmer.com
Ulmer & Berne, LLP
500 West Madison, Suite 3600
Chicago, Illinois 60661
Ph: (312) 658-6500 - General
Fx: (312) 658-6559 - Fax

*Attorneys for Claimants*

# EXHIBIT A

# Promissory Note

| (A) Name of Borrower | (B) Amount of Loan (Principal Sum) |
|---|---|
| CHARLES PETER WALLACE | 867,500 |

1. **Indebtedness.** CHARLES PETER WALLACE ("Borrower") hereby affirms and acknowledges his/her indebtedness to Citigroup Global Markets Holdings Inc. ("Holdings") for the amount indicated in Section (B) above.

2. **Payment.** In connection with the aforementioned, Borrower promises to pay to the order of Holdings the sum indicated in Section (B) above, payable in nine equal annual installments of $ 96,388, commencing on the first anniversary of the date on which Borrower executes this Promissory Note ("Note") as indicated below. For the length of time that the Borrower is placed on an approved leave of absence by Holdings, or its affiliates, the Borrower's anniversary date shall be extended by the length of the leave of absence. The Borrower authorizes and directs Holdings, or its affiliates, to deduct such installment payment(s) from any securities account that Borrower maintains with Holdings, or its affiliates, or from any salary, commission or other compensation payments owed to Borrower from Holdings, or its affiliates. If this is not sufficient, then the Employee shall pay the outstanding amount by check.

3. **Imputed Interest Income.** The Borrower acknowledges that the loan evidenced by this Note is interest free for as long as there is no default in payment. Holdings, or its affiliates, is required to annually report in the Borrower's gross income the value of the forgone interest at the applicable federal rate. As a result, FICA is due on this income and the Borrower authorizes and directs Holdings, or its affiliate, to withhold this FICA amount from the Borrower's salary, commissions or other compensation payments. If this is not sufficient, then the Borrower authorizes this FICA amount to be deducted from the Borrower's securities account.

4. **Acceleration of Payment.** Upon the happening of any of the following events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of termination, at the rate of prime plus 6% per annum. Default shall mean where the Borrower's employment with Holdings, or any subsidiary or affiliate thereof, comes to an end for any reason or no reason, is adjudicated as bankrupt, makes an assignment for the benefit of creditors, or files a petition for relief under the bankruptcy laws.

5. **Registration/Representations.** The Borrower understands and agrees that the loan evidenced by the Note is expressly conditioned upon the Borrower's prompt registration with all applicable regulatory bodies and the accuracy of all information which the Borrower has provided including that relating to the Borrower's historical commission production and regulatory and disciplinary background.

6. **Cost of Collection.** The Borrower promises to pay Holdings for all expenses it incurs, including attorney's fees, in connection with the collection of any outstanding indebtedness due under this Note or to enforce any provision hereunder.

7. **Remedies.** Holdings or its affiliates shall have the right, upon default, without notice, to withhold any monies, commissions, securities, commodities, or other properties of the Borrower which may at any time be in the possession of Holdings or its affiliates, and to apply such monies, etc. to satisfy the indebtedness due under this Note. The Borrower authorizes and consents to such remedies.

8. **Notices.** The Borrower, Borrower's heirs, successors, assigns and personal representatives hereby waive presentment, demand for payment, notice of dishonor or protest and any and all other notices and demands in connection with the delivery, performance, default or enforcement of this Note.

9. **Dispute Resolution.** Subject to Paragraph 13, the Borrower hereby agrees that any controversy arising out of or relating to this Note, or a default hereunder shall be submitted to and settled by arbitration pursuant to the constitution, by-laws, rules and regulations then in effect of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc.

10. **Successors and Assigns.** This Note shall inure to the benefit of Holdings, its affiliates, and any successors in interest to the business of Holdings, whether through merger, acquisition, sale or other transfer. Holdings retains the right to assign its rights, title and interest in this Note to any of its affiliates.

11. **Modifications.** The Borrower acknowledges that this Note contains the entire agreement between Holdings and the Borrower with respect to the loan and the repayment thereof, and the Borrower is not relying on any other statements, representations or provisions not contained herein. This Note may not be altered or modified in any way unless it is in writing and signed by the parties hereto.

12. **Governing Law.** This Note and the loan evidenced thereby shall be governed by the laws of the State of New York.

13. **Jurisdiction.** The Borrower consents to the jurisdiction of the courts of the State of New York for the purpose of any action to compel arbitration in accordance with the terms of this Note or to confirm or enter judgment upon any arbitration award.

---

TO BE SIGNED IN THE PRESENCE OF A NOTARY PUBLIC

Signature of the Borrower: [signed]

Date: 7/25/08

Social Security Number: Redacted

P&L#: 43J

State of Florida
County of Dade } ss

Subscribed and sworn to before me on July 25, 2008

[Notary signature: Minna Lea Forer]
Notary Public

MINNA LEA FORER
Commission DD 739161
Expires January 18, 2012
Bonded Thru Troy Fain Insurance 800-385-7019

5193-9 (1/2008) Page 1 of 2

* 5 1 9 3 *

# EXHIBIT B

## Special Compensation Agreement

citi smith barney

| (A) Name of Employee | (B) Amount of Special Compensation |
|---|---|
| CHARLES PETER WALLACE | 867,500 |

This Special Compensation Agreement (the "Agreement"), entered into on this 25TH day of JULY, 20 08 between the employee identified in Section (A) above (the "Employee") and Citigroup Global Markets Inc. ( "Smith Barney").

1. **Special Compensation.** Employee shall be paid special compensation in the amount indicated in Section (B) above, less appropriate payroll taxes and withholdings, in nine equal annual installments commencing on the first anniversary of the date on which Employee executes this Agreement. For the length of time that the Employee is placed on an approved leave of absence by Smith Barney, the Employee's anniversary date shall be extended by the length of the leave of absence. In all cases, such special compensation shall not be remitted directly to the Employee, but shall be applied to any financial obligation the Employee has with Smith Barney, or any of Smith Barney's affiliates, including Citigroup Global Markets Holdings Inc. The special compensation provided for in this paragraph shall cease upon the termination of the Employee's employment with Smith Barney and, thereafter, Smith Barney shall have no further obligation to make any of the the outstanding installment payments provided for herein.

2. **Death.** Notwithstanding any provision in this Agreement to the contrary, in the event the Employee's employment with Smith Barney is terminated due to death, Employee (or his/her estate) shall be paid a special death payment in the amount indicated in Section (B) above less any portion of the special compensation previously paid to the Employee pursuant to Paragraph 1 of this Agreement. This special death payment shall be subject to appropriate payroll taxes and withholdings and shall not be remitted directly to the Employee (or his/her estate) but shall be applied to any financial obligation the Employee (or his/her estate) has with Smith Barney, or any of its affiliates, including Citigroup Global Markets Holdings Inc.

3. **Registration/Representations.** The Employee understands and agrees that this Agreement is expressly conditioned upon the Employee's prompt registration with all applicable regulatory bodies and the accuracy of all information which the Employee has provided including that relating to the Employee's historical commission production and regulatory and disciplinary background.

4. **Confidentiality of Records/Non Solicit.** Employee understands that any client record and information, including names, addresses, telephone numbers and account information, whether generated by Smith Barney or Employee, are confidential and proprietary information and important business assets of Smith Barney. This information is extremely valuable to Smith Barney, is not generally known outside Smith Barney, is unique and cannot be easily duplicated or acquired. Employee agrees to use such information only in the normal course of Employee' employment with Smith Barney and will not remove any client-related records from Smith Barney's premises, whether in original or copied form. Employee further agrees that for a period of one year following Employee's termination of employment from Smith Barney, for any or no reason, Employee will not solicit or contact any clients that Employee learned of during employment with Smith Barney, other than those clients which Employee may have brought with Employee and for whom the Employee was the broker of record at Employee's prior employer. In the event Employee breaches this paragraph, Employee agrees that Smith Barney will be entitled to injunctive relief. Employee recognizes that Smith Barney will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Smith Barney or to protect and preserve the status quo. Therefore, Employee CONSENTS TO THE ISSUANCE OF A TEMPORARY RESTRAINING ("TRO") or A PRELIMINARY or PERMANENT INJUNCTION ("PI") ordering: (a) that Employee return all records in any form that they exist; (b) that Employee be restrained from using or disclosing any information contained in such records; (c) that Employee be restrained, for a period of one year, from soliciting or contacting any clients that Employee learned of during the employment with Smith Barney.

5. **Dispute Resolution.** Subject to Paragraph 10, any controversy arising out of or relating to this Agreement shall be submitted to and settled by arbitration pursuant to the constitution, by-laws, rules and regulations then in effect of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc.

6. **At-Will.** This Agreement does not constitute a contract of employment for any definite period of time. The Employee's employment with Smith Barney is on an "at-will" basis which means that the employment relationship can be terminated by either party at any time for no reason or any reason not otherwise prohibited by law.

7. **Successors.** This Agreement shall inure to the benefit of Smith Barney, its affiliates, and any successors in interest to the business of Smith Barney, whether through merger, acquisition, sale or other transfer.

8. **Modifications.** This Agreement contains the entire agreement between the Employee and Smith Barney with respect to any special compensation, and the Employee is not relying on any other statements, representations or provisions not contained herein. This Agreement may not be altered or modified in any way unless it is in writing and signed by the parties hereto.

9. **Governing Law.** This Agreement shall be governed by the laws of the State of New York.

10. **Jurisdiction.** The Employee consents to the jurisdiction of the courts of the State of New York for the purpose of any action to compel arbitration in accordance with the terms of this Agreement or to confirm or enter judgment upon any arbitration award.

TO BE SIGNED IN THE PRESENCE OF A NOTARY PUBLIC

Employee Signature: [signed]  Date: 7/25/08
Branch Manager Signature: [signed]  Date: 7/25/08

State of Florida
County of Dade

Subscribed and sworn to before me on July 25, 2008

[Notary seal: MINNA LEA FORER, Commission DD 739161, Expires January 18, 2012, Bonded Thru Troy Fain Insurance 800-385-7019]

Notary Public: Minna Lea Forer

5193-9 (1/2008) Page 2 of 2