United States District Court
for the
Southern District of Florida

| Morgan Stanley Smith Barney, LLC, | ) | |
|---|---|---|
| and Morgan Stanley Smith Barney | ) | |
| FA Notes Holdings, LLC, Plaintiff | ) | |
| | ) | Civil Action No. 17-mc-23855-Scola |
| v. | ) | |
| | ) | |
| Charles Peter Wallace, Defendant. | ) | |

## Order Confirming Arbitration Award

In the underlying arbitration in this case, Defendant Charles Peter Wallace asserted various employment-related claims against Plaintiffs Morgan Stanley Smith Barney, LLC, and Morgan Stanley Smith Barney FA Notes Holdings, LLC (collectively "Morgan Stanley"), seeking over $3.5 million in damages. Morgan Stanley, in turn, asserted a claim against Wallace to collect a debt of nearly $500 thousand, plus interest, based on a promissory note signed during Wallace's employment with Morgan Stanley. Both claims were held in one consolidated arbitration proceeding before a Financial Industry Regulatory Authority arbitration panel. Morgan Stanley seeks to confirm the FINRA award which denied Wallace's claims in their entirety and awarded $550,000 to Morgan Stanley on its promissory-note claim. (Pls.' Mot. to Confirm, ECF No. 1.) Wallace, conversely, asks the Court to vacate the award. (Def.'s Resp. and Mot. to Vacate, ECF No. 18.) For the reasons that follow, the Court **grants** Morgan Stanley's motion (**ECF No. 1**) and **denies** Wallace's motion (**ECF No. 18**).

### 1. Background

Wallace, a former Morgan Stanley financial advisor, initiated arbitration proceedings in January 2014 by filing a statement of claim against Morgan Stanley alleging: wrongful termination; defamation; breach of fiduciary duty; negligence; breach of contract; breach of the duty of good faith and fair dealing; violation of FINRA Rule 2110; conversion; and cancellation of Wallace's promissory note. (Pls.' Mot. at 5; FINRA Award, Ex. A., ECF No. 1-1, 3.) About a month later, Morgan Stanley filed a separate statement of claim against Wallace, seeking to recover amounts due based on Wallace's alleged breach of the promissory note that Wallace sought cancellation of. (Pls.' Mot. at 5.) At Wallace's request, the arbitration panel consolidated both claims. (Pls.' Mot. at 6.) After much discovery, the panel held an evidentiary hearing which took place over the course of eleven days in June, August, and September 2017.

(*Id.*) The Panel issued its award in October, denying Wallace's claims in their entirety and ruling in favor of Morgan Stanley on its promissory-note claim. (*Id.* at 7.) Notably, by the agreement of the parties, the panel did not set forth the reasons supporting its decision. (Pls.' Reply, ECF No. 28, 3.)

### 2. Standard of Review

The Federal Arbitration Act "imposes a heavy presumption in favor of confirming arbitration awards and federal courts should defer to an arbitrator's decision whenever possible." *Pochat v. Lynch*, No. 12-22397-CIV, 2013 WL 4496548, at *5 (S.D. Fla. Aug. 22, 2013) (Rosenbuam, J.) (quotation marks omitted) (quoting *Riccard v. Prudential Ins. Co. of Am.,* 307 F.3d 1277, 1288 (11th Cir. 2002) and *Frazier v. CitiFinancial Corp., LLC,* 604 F.3d 1313, 1321 (11th Cir. 2010). As long as an arbitrator is even arguably construing the issues before him, based on the parties' agreement, and acting within the scope of his authority, "that a court is convinced he committed serious error does not suffice to overturn his position." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987). It is "well settled that judicial review of an arbitration award is narrowly limited." *Davis v. Prudential Sec., Inc.,* 59 F.3d 1186, 1190 (11th Cir.1995). In fact, such review is "among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi–Cinema, Inc.,* 508 F.3d 995, 1001 (11th Cir.2007) (citation and quotation marks omitted). In short, "it is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *White Springs Agric. Chemicals, Inc. v. Glawson Investments Corp.*, 660 F.3d 1277, 1281 (11th Cir. 2011) (alterations omitted) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671 (2010)). Ultimately, "a court's confirmation of an arbitration award is usually routine or summary." *Riccard,* 307 F.3d at 1288.

### 3. Discussion

In asking the Court to vacate the arbitration award here, Wallace complains the panel exceeded its authority by considering issues beyond the scope of the arbitration proceedings. According to Wallace, Morgan Stanley claimed "it had terminated Wallace because he had concealed his actual knowledge that his client was incarcerated." (Def.'s Resp. and Mot. at 34.) So, says Wallace, the only way Morgan Stanley could successfully defend against all of his claims was by demonstrating to the arbitration panel that these allegations were in fact true. (*Id.* at 2 ("All of the parties' claims and defenses hinged on [Morgan Stanley's] asserted grounds for termination.").) However, Wallace maintains "there was absolutely no evidence to support that [he] knew

his client was incarcerated." (*Id.* at 3.) Therefore, he contends, the only possible way for the panel to have found in Morgan Stanley's favor was if it considered matters beyond the scope of the arbitration. (*Id.* (insisting the award "could solely be based upon allegations that [Morgan Stanley] had never pled nor offered prior to the arbitration proceedings as the basis of Mr. Wallace's termination").)

While it is indeed true that Section 10 of the FAA permits vacatur of an arbitration award where the arbitrators have "exceeded their powers," 9 U.S.C. § 10(a)(4), proving such an overstep represents an extraordinarily "high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Here, Wallace's arguments fall short for a number of reasons.

First, even if the Court accepts that Wallace is correct regarding Morgan Stanley's sole proffered reason for Wallace's termination and that there was indeed a dearth of evidence to support firing Wallace for that particular reason, it does not necessarily follow that the panel's award exceeded its powers. In order to establish the panel's overreach, with respect to Wallace's claims against Morgan Stanley, Wallace would have to show that the panel otherwise found Wallace proved his case and the only reason he lost was because Morgan Stanley prevailed on a defense that the panel should not have considered.

However, nothing from the record nor Wallace's presentation supports this theory. Although Wallace has reproduced, within his consolidated response and motion to vacate, over ten pages of testimony and argument from various parts of the arbitration hearing, he has not shown that the panel concluded that he in fact proved his case on any of his claims. Nor has Wallace shown that the panel could not have found in Morgan Stanley's favor on some other basis. Certainly, no such conclusion can be drawn from the award itself; the award is concise, briefly stating (with respect to Wallace's claims) only: "Wallace's claims are denied in their entirety." (FINRA Award at 4.) Without more, Wallace simply has not succeeded in demonstrating that, absent the panel's exceeding its scope, there is otherwise no support for the award. His conclusion that the panel's decision was based on information it had no authority to consider is pure conjecture: the award does not disclose, to any extent, the evidence the panel relied on; the testimony it determined was most believable; or the arguments it found most persuasive.

Second, the Court does not agree with Wallace's narrow characterization of the subject matter of the arbitration. "An arbitrator's view of the scope of the issue committed to his care is entitled to . . . far-reaching respect and deference . . . ." *El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores de Puerto Rico*, 961 F.2d 317, 321 (1st Cir. 1992). The Court finds the parties' agreement to arbitrate broadly worded. Upon filing their initial statements with

the arbitration panel, the parties agreed to "submit the present matter in controversy, as set forth in the attached claim [and] answers . . . to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." (Pls.' Reply and Resp., ECF No. 28, 6–7; Def.'s Resp. and Mot. at 4.) According to Wallace, the panel should not have considered any evidence of Wallace's alleged wrongdoing except for the allegation that Wallace had concealed knowledge that his client was incarcerated. However, throughout these proceedings Wallace maintained there was *no* basis for his termination. Thus evidence regarding Morgan Stanley's concerns about any of Wallace's misconduct would be expected. Wallace's argument to the contrary amounts only to an improper attempt to relitigate the merits of issues that have already been resolved by the arbitration panel. *B.L. Harbert Int'l, LLC v. Hercules Steel Co.,* 441 F.3d 905, 907 (11th Cir. 2006) ("If we permit parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less.") Based on the record before it, the Court cannot even come close to concluding that the panel "act[ed] outside the scope of [its] contractually delegated authority." *Oxford Health Plans LLC v. Sutter,* 569 U.S. 564, 569 (2013).

Next, Wallace complains the panel improperly allowed the introduction of inadmissible evidence and overruled objections he made which should have been sustained. Even if the Court found these allegations to be true—which it does not—such conduct would not, in any event, justify vacating the panel's award. To begin with, Wallace agreed to arbitrate his claims "in accordance with the FINRA By-Laws, Rule, and Code of Arbitration Procedure." (Def.'s Resp. and Mot. at 4.) Wallace does not dispute Morgan Stanley's representation that FINRA Rule 13604 of the FINRA Code of Arbitration Procedure provides, "The panel will decide what evidence to admit. The panel is not required to follow state or federal rules of evidence." Further, arbitrators enjoy "wide latitude in conducting an arbitration hearing" and "[a]rbitration proceedings are not constrained by formal rules of procedure or evidence." *Rosenseweig v. Morgan Stanley & Co., Inc.,* 494 F.3d 1328, 1333 (11th Cir.2007). And thus, "the admission of evidence . . . does not necessarily bear consequence on how the arbitrators ultimately arrived at the final award in this case." *Butterworth v. Morgan Keegan & Co.*, No. 2:12-CV-00337-TMP, 2012 WL 4732886, at *6 (N.D. Ala. Sept. 28, 2012); *see also Amalgamated Meat Cutters & Butcher Workmen v. Neuhoff Bros.,* 481 F.2d 817, 820 (5th Cir.1973) ("the arbitrator has great flexibility and the courts should not review the legal adequacy of his evidentiary rulings"). These concepts are particularly germane here, where the award does not indicate in any way what evidence the panel considered in reaching its

decision. Without more, the panel's evidentiary rulings simply do not support vacating the award.

Finally, the cases relied upon by Wallace to support his claim that the panel exceeded its authority are unavailing. In these cases, where reviewing courts vacated arbitration awards, the arbitrators granted relief that was not actually requested. For example, in *Davis v. Prudential Sec., Inc.*, the court vacated the arbitrators' decision to award fees when that issue had not been actually ever submitted to the arbitrators for determination. 59 F.3d at 1195. Similarly, in *Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers Int'l Union, AFL-CIO, Local No. 361*, the court found the arbitrator exceed his authority by imposing a disciplinary sanction on an employee where the issue submitted for his review was limited only to whether just cause supported the employee's discharge. 726 F.2d 698, 700 (11th Cir. 1984). Neither of these cases, nor the others cited by Wallace like them, apply here. There is nothing in the panel's award itself that indicates it decided anything other than the issues that were actually before it.

### 4. Conclusion

For the reasons set forth above, the Court **grants** Morgan Stanley's motion to confirm the arbitration award (**ECF No. 1**) and **denies** Wallace's motion to vacate the award (**ECF No. 18**.) The October 12, 2017 arbitration award is thus **confirmed** and the Clerk is directed to **close** this case. To the extent the parties are unable to reach an agreement, the Court reserves jurisdiction to consider any motions for attorneys' fees in this matter.

On or before **May 2, 2018**, Morgan Stanley must file and submit to chambers a proposed form of judgment. Further, to the extent Morgan Stanley believes an order regarding the transfer of amounts held in Wallace's accounts at Morgan Stanley is still necessary, it must also file and submit to chambers, on or before **May 2, 2018**, a proposed order in that regard as well.

Within its response to Wallace's motion and its reply to its own motion, Morgan Stanley asks the Court to impose sanctions on Wallace. This request does not comply with Federal Rule of Civil Procedure 11(c)(2) and is therefore denied.

**Done and ordered** at Miami, Florida on April 25, 2018.

Robert N. Scola, Jr.
United States District Judge